**ORIGINAL**



1  EDWARD J. QUIRK (Nevada Bar No. 828)
   MICHAEL J. McCUE (Nevada Bar No. 6055)
2  W. WEST ALLEN (Nevada Bar No. 5566)
   QUIRK & TRATOS
3  3773 Howard Hughes Parkway
   Suite 500 North
4  Las Vegas, Nevada 89109
   (702) 792-3773 - telephone
5  (702) 792-9002 - facsimile

6  Attorneys for Defendants
   VendingData Corporation, et al.

7

8           **UNITED STATES DISTRICT COURT**

9                **DISTRICT OF NEVADA**

10

11  SHUFFLE MASTER, INC., a Nevada          )    CV-S-02-0438-JCM-PAL
    corporation,                            )
12                                          )    **DEFENDANTS' ANSWER TO**
                                            )    **COMPLAINT FOR PATENT**
13              Plaintiff,                   )    **INFRINGEMENT AND**
                                            )    **COUNTERCLAIMS AGAINST**
14        v.                                )    **SHUFFLE MASTER, INC. FOR**
                                            )
15  VENDINGDATA CORPORATION, a              )    **(1)Declaratory Relief for Invalidity and**
    Nevada corporation; CASINOVATIONS,      )    **Non-Infringement**
16  INC., a Nevada corporation; and         )    **(2)Breach of Contract**
    CASINOVATIONS SALES                     )    **(3)Fraud in the Inducement**
17  INCORPORATED; a Nevada corporation.)    )    **(4)Violation of Nevada Uniform Trade**
                                            )    **Secrets Act**
18              Defendants.                  )    **(5)Conversion**
                                            )    **(6)Beach of Duty of Candor to the**
19                                          )    **Patent Office**
                                            )
20  _____ )    **JURY DEMANDED**

21        Defendants VENDINGDATA CORPORATION, CASINOVATIONS, INC., and

22  CASINOVATIONS SALES INCORPORATED (collectively referred to herein as

23  "VendingData"), through their counsel of record, demand a jury trial on the issues presented,

24  and answer the Complaint and assert their counterclaims as follows:

25                          **ANSWER**

26        1.    VendingData admits the allegations contained in Paragraph 1 of the

27  Complaint.

28        2.    VendingData admits the allegations contained in Paragraph 2 of the

Quirk & Tratos
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

19

1    Complaint.

2        3.      VendingData lacks sufficient knowledge or information to form a belief as to

3    the truth of the allegations in Paragraph 3 of the Complaint and therefore denies the same.

4        4.      VendingData admits the allegations contained in the first two sentences of

5    Paragraph 4 of the Complaint.  VendingData denies that it conducts business under the

6    name "Casinovations."

7        5.      VendingData admits the allegations contained in the first sentence of

8    Paragraph 5.    VendingData denies that Casinovations, Inc. is in the business of

9    manufacturing, selling or leasing card shuffler machines.

10        6.      VendingData admits the allegations contained in the first sentence of

11    Paragraph 6 of the Complaint. VendingData denies that Casinovations Sales Incorporated

12    is in the business of manufacturing card shuffler machines.

13        7.      VendingData admits that Casinovations, Inc. is a subsidiary of VendingData

14    Corporation.  VendingData denies that Casinovations Sales Incorporated is a subsidiary of

15    VendingData Corporation.

16        8.      Answering Paragraph 8 of the Complaint, VendingData admits that a claim for

17    patent infringement may be brought under these statutory provisions, but denies that

18    Plaintiff's patent is valid or infringed.

19        9.      VendingData incorporates by reference its answers to paragraphs 1 through

20    8 in response to Paragraph 9 of the Complaint.

21        10.     Answering Paragraph 10 of the Complaint, VendingData admits that U.S.

22    Patent No. 6,325,373 ("the '373 Patent") was issued, but denies that the patent is valid.

23        11.     Answering Paragraph 11 of the Complaint, VendingData is without knowledge

24    sufficient to form a belief as to the truth of the allegations contained therein, and therefore

25    denies the same.

26        12.     Answering Paragraph 12, VendingData denies the allegations thereof.

27        13.     Answering Paragraph 13, VendingData denies the allegations thereof.

28        14.     Answering Paragraph 14, VendingData denies the allegations thereof.

Quirk & Tratos
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

2

15. Answering Paragraph 15, VendingData denies the allegations thereof.

With respect to the *ad danum* clause, VendingData denies that Shuffle Master, Inc. is entitled to any of the relief requested or any other relief.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by the doctrine of prosecution laches.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by the doctrine of late claiming.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred by its inequitable conduct, in that one or more of the inventions described or claimed in the '373 patent, and/or its predecessors, were disclosed to it by Defendants, under binder of secrecy and non-use, prior to the filing date of the earliest predecessor of the '373 patent, and subsequently used in the filing of Plaintiff's patent applications.

### FIFTH AFFIRMATIVE DEFENSE

The '373 patent is invalid for failure to comply with 37 C.F.R. § 1.83, in that the features specified in the patent claims are not shown in the drawing as required.

### SIXTH AFFIRMATIVE DEFENSE

Upon information and belief, U.S. Patent No. 6,325,373 is invalid, unenforceable and void for failure to comply with the provisions of 35 U.S.C. §§ 101, 102, 103, 112, 115 and/or 116 for one or more of the following reasons:

a. the alleged invention claimed therein was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the named inventors;

b. the alleged invention claimed therein was known, practiced, or used by others, or was patented or described in a printed publication in this or a foreign

3

Quirk & Tratos
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States;

c.    the named inventors abandoned the invention;

d.    the alleged invention claimed therein was first patented or caused to be patented, or was the subject of an inventor's certificate, by the named inventors or their legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application for patent or inventor's certificate filed more than twelve months before the filing of the application in the United States;

e.    the alleged invention claimed therein was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the named inventors;

f.    the named inventors did not invent the subject matter sought to be patented and failed to disclose existing use of the subject matter;

g.    before the named inventor's alleged invention thereof, the alleged invention was made in this country by another who had not abandoned, suppressed, or concealed it;

h.    the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the claimed invention pertains;

i.    the specification does not contain a written description of the invention, and the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is mostly nearly connected, to make and use the same;

j.    the specification does not set forth the best mode contemplated by the inventor of carrying out his invention;

k.    the specification does not conclude with one or more claims particularly

4

1

2

pointing out and distinctly claiming the subject matter which the applicants regard as their or his invention.

## SEVENTH AFFIRMATIVE DEFENSE

U.S. Patent No. 6,325,373 is unenforceable due to the inequitable conduct before the United States Patent and Trademark Office ("USPTO") of the named inventors, their attorneys, and others, including the Plaintiff, involved in the preparation and prosecution of the patent and/or in seeking issuance of the patent by failing to disclose to the USPTO information of which they were aware and which was material to the examination of the application, thereby violating 37 C.F.R. § 1.56. The instances of fraudulent and inequitable conduct included at least the following:

a.  Failure to disclose to the USPTO that one or more of the inventions described in the '373 patent or its predecessor applications were disclosed to Plaintiff by Defendants during confidential meetings held during at least May, June and July of 1994. (Plaintiff's original patent application was filed August 9, 1994.) These disclosures included written designs, drawings and documentation that incorporated segmented displays on shuffling machines.

b.  Failure to advise the USPTO of prior art showing that the use of counters, meters, seven-segment displays, and other registration means in gaming equipment and other equipment was conventional prior to the alleged invention thereof by Plaintiff.

c.  Failure to disclose to the USPTO printed publications, and public uses, of counters, meters, seven-segment displays, and other registration means in gaming equipment and other equipment which would have been relevant prior art to the invention claimed in the '373 patent.

## EIGHTH AFFIRMATIVE DEFENSE

By reason of the proceedings in the USPTO and foreign patent offices, during the prosecution of the application for U.S. Patent No. 6,325,373 (and any foreign counterparts) and the admissions and representations made by the named inventors and/or their

Quirk & Tratos
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

5

1   attorneys, Plaintiff is estopped to claim for the patent a construction covering anything made,
2   used or sold by VendingData.

3                              NINTH AFFIRMATIVE DEFENSE

4       Upon information and belief, Plaintiff has failed to comply with the provisions of 35
5   U.S.C. § 287, and thus is precluded from collection of damages.

6                              TENTH AFFIRMATIVE DEFENSE

7       Upon information and belief, Plaintiff's claim is barred by its own misuse of the '373
8   patent for improper purposes, including, but not limited to, tying arrangements, package
9   licensing, refusal to license, price fixing, the misappropriation of intellectual property and
10  other misconduct as specifically set forth in Defendants' affirmative defenses and
11  counterclaims.

12                           ELEVENTH AFFIRMATIVE DEFENSE

13      Upon information and belief, Plaintiff's claim is barred by its unfair competition and
14  monopolistic, anti-competitive conduct in contravention of antitrust laws as specifically set
15  forth in Defendants' affirmative defenses, Counterclaims, and as evidenced by Plaintiff's
16  actions against numerous other competitors, including, but not limited to, Progressive
17  Games, Inc. and Innovative Gaming Corporation of America.

18                            TWELFTH AFFIRMATIVE DEFENSE

19      Plaintiff has known since at least 1994 of the proposed commercial use and/or
20  proposed sale of VendingData's accused products in the United States. At no time during
21  the succeeding eight (8) years has Plaintiff asserted any right against Defendant or others
22  that use of a counter display on a gaming device was Plaintiff's proprietary information.
23  Plaintiff's claims are barred by the doctrines of laches and estoppel.

24                          THIRTEENTH AFFIRMATIVE DEFENSE

25      Plaintiff failed to mitigate its damages or losses.

26                          FOURTEENTH AFFIRMATIVE DEFENSE

27      Plaintiff's claim and prayer for equity are barred by the doctrine of unclean hands.

28

Quik & Tratos
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

## FIFTEENTH AFFIRMATIVE DEFENSE

All possible affirmative defenses of Defendants may not have been alleged herein insofar as sufficient facts were not available after reasonable inquiry; therefore, Defendants reserve the right to amend this answer to allege additional affirmative defenses as subsequent investigation warrants.

## **COUNTERCLAIMS**

Defendant/Counterplaintiff VendingData Corporation, by its counsel, for its Counterclaim against Plaintiff/Counterdefendant Shuffle Master, Inc. alleges as follows:

1.    This Court has jurisdiction against the Plaintiff/Counter-defendant Shuffle Master, Inc. based upon its consent to personal jurisdiction by filing this action in the District of Nevada and the company's ongoing business transactions within this District.

2.    The Court has jurisdiction over the subject matter of the counterclaims set forth herein pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 because Shuffle Master has sued VendingData in the Complaint on file herein for infringement of U.S. Patent No. 6,325,373 ("the '373 patent"). Jurisdiction is also proper pursuant to 28 U.S.C. §§ 1331, 1332(a)(4), and 1338.

3.    To the extent necessary, this Court has supplementary jurisdiction over any state law claims asserted herein pursuant to 28 U.S.C. § 1367.

4.    Venue is proper pursuant to 28 U.S.C. §§ 1391(a), 1391(c) and 1400(b).

## **GENERAL ALLEGATIONS**

5.    Counterplaintiff VendingData Corporation ("VendingData") is a Nevada corporation that owns all research, design, technology, and patents associated with a revolutionary automated gaming system for randomly ejecting playing cards from a group of vertically stacked unshuffled cards. The system was developed by a group of inventors and professors in or about 1992 through early 1994 and known as the Random Ejection Shuffler™ ("RES").

6.    VendingData is the parent corporation of Casinovations, Inc. and successor-in-

7

1 interest to Sharps International and Casinovations Incorporated, the businesses and original
2 assignees that previously held the intellectual property rights associated with the RES
3 technology.

4     7.     Counterdefendant Shuffle Master, Inc. ("Shuffle Master") is a Minnesota
5 corporation with a principal place of business in Las Vegas, Nevada. Shuffle Master sells
6 and leases automatic card shuffling devices that, unlike RES technology, physically intermix
7 playing cards.

8     8.     On information and belief, the '373 patent asserted by Shuffle Master is a
9 continuation of application No. 08/892,742, filed July 15, 1997, now U.S. 6,139,014, which
10 in turn is a continuation of application No. 08/504,035, filed July 19, 1995, which is U.S.
11 5,695,189, which in turn is a continuation of application No. 08/287,729, filed August 9, 1994
12 (abandoned). Said patents and applications are collectively referred to as the "'373 Patent
13 Predecessors."

14     9.     On information or belief, Shuffle Master owns other patents or pending
15 applications which rely for priority on the '373 patent or one or more of the '373 Patent
16 Predecessors.

17     10.     On or about April 8, 1994, VendingData's predecessors-in-interest filed a
18 patent application regarding VendingData's RES technology with the USPTO entitled
19 "Playing Card Shuffler." The patent was issued by the United States Patent and Trademark
20 Office on October 14, 1997, which is U.S. Patent No. 5,676,372 ("the '372 patent").
21 VendingData is the owner of the '372 patent by assignment.

22     11.     Since at or about the time VendingData's predecessors-in-interest first filed
23 their '372 patent application regarding the RES technology, Shuffle Master has been
24 engaged in a continuous, persistent effort to monitor, review and acquire the RES
25 technology.

26     12.     In or about May 1994, Shuffle Master executives first met with RES inventors
27 to discuss Shuffle Master's acquisition of the RES technology. Shuffle Master executive,
28 Joe Lahti, executed a Confidential Relationship Agreement with VendingData's predecessor

Quirk & Tratos
Las Vegas, Nevada 89109
Suite 500 North, 3773 Howard Hughes Parkway
(702) 792-3773
(702) 792-9002 (fax)

1    Sharps International on or about May 27, 1994, to enable Shuffle Master engineers to review
2    proprietary trade secrets, intellectual property and all other confidential information regarding
3    the RES technology. Pursuant to the confidentiality agreement, Shuffle Master, by its
4    representative, promised to maintain the confidentiality of the proprietary information
5    reviewed and to refrain from using any proprietary information except for the limited purpose
6    of determining whether Shuffle Master would acquire the technology. A true and correct
7    copy of the Confidentiality Agreement is attached hereto as **Exhibit 1**.

8         13.    Shuffle Master executive, Joe Lahti, and the company's founder, John
9    Breeding personally met with VendingData's predecessors-in-interest on various occasions
10   from May 1994 through July 1994, to discuss Shuffle Master's acquisition of the RES
11   technology. During this time they were provided with, among other things, a videotape
12   demonstrating the RES technology, business plans, drawings and other designs detailing
13   the VendingData RES machine.

14        14.    At a meeting on July 1, 1994, Shuffle Master representatives were specifically
15   provided technical depictions of a working RES machine. The detailed depictions viewed
16   by John Breeding and others at Shuffle Master, in addition to revealing the RES invention's
17   underlying design and technology, included drawings for a sensor to count cards and a small
18   digital display on the side of the machine that would show the status and number of decks
19   shuffled. This small counter display was similar to other multi-segmented, or seven-
20   segmented liquid crystal diode (LCD) displays as commonly found on virtually all gaming or
21   office machines to monitor use.

22        15.    While the small counter display shown to Shuffle Master representatives from
23   May through July 1994 was ancillary to the underlying RES technology, it was nonetheless
24   clearly incorporated into the original RES design viewed by Shuffle Master. Shuffle Master
25   at that time in 1994 had no working shufflers incorporating a multi-segmented or any other
26   LCD display to monitor use on a shuffling machine.

27        16.    After approaching Defendants and reviewing the underlying RES technology,
28   Shuffle Master, on August 4, 1994, filed U.S. Patent Application Serial No. 08/287,729,

9

1    which was the first of the '373 Patent Predecessors.

2        17.    The VendingData RES technology was further developed by the company

3    between late 1994 and 1995 and was featured at the October 1995 World Gaming Congress

4    and Expo in Las Vegas, Nevada.

5        18.    Immediately thereafter, in or about November 1995, Shuffle Master again

6    sought to acquire the RES technology and again arranged for its engineers to examine the

7    RES technology.  This time Shuffle Master also reviewed a working RES prototype.  The

8    prototype incorporated, pursuant to designs reviewed by Plaintiff in 1994, a small multi-

9    segmented digital display for the output of alpha-numeric symbols.  Shuffle Master retained

10   at least one RES prototype for several months.  At that time, Shuffle Master still had no

11   working shuffler machines of its own that incorporated a digital display.

12       19.    Negotiations regarding Shuffle Master's second attempt to acquire rights to the

13   RES technology and its related intellectual property fell through in early 1996.  The RES

14   technology was then displayed at the International Gaming Exhibition in London in January

15   1997, where it was well received.

16       20.    By April 1997, Shuffle Master initiated its third attempt to acquire the RES

17   technology.  Shuffle Master's President executed a second Confidential Relationship

18   Agreement on April 8, 1997.    A true and correct copy of the Second Confidentiality

19   Agreement is attached hereto as **Exhibit 2**.  As with the first Confidentiality Agreement,

20   Shuffle Master promised to keep all reviewed materials confidential in exchange for the

21   opportunity to conduct an extensive review of Defendants' RES technology.

22       21.    On or about May 22, 1997, Defendants' board and owners rejected Shuffle

23   Master's third offer.  Following the World Gaming Congress and Expo in 1998, Shuffle

24   Master executives continued from time to time to discuss with Defendants' president Shuffle

25   Master's acquisition of the RES technology.  Following the World Gaming Congress and

26   Expo in 1999, these discussions again became serious.  Shuffle Master hired a bank to

27   assist with its efforts to evaluate the financial viability of RES products and to make a fourth

28   concerted effort to purchase the RES technology.  VendingData again refused to sell.

Quirk & Tratos
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

22.     Following Plaintiff's fourth attempt to acquire the RES technology and having examined RES machines with multi-segmented displays for approximately six (6) years, Shuffle Master on March 8, 2000, filed for the first time the new claims within its pending '373 patent application regarding displays that are at issue in this action.

23.     At or about this time, between February 2000 and April 2000, Shuffle Master made its fifth attempt to acquire the RES technology.  During these discussions with VendingData president Steven J. Blad, Shuffle Master representatives offered Steven Blad compensation in his individual capacity if Mr. Blad would leave VendingData and arrange for Shuffle Master to acquire VendingData's technology.  Mr. Blad refused.

24.     Most recently, VendingData has announced its intent to produce the most revolutionary RES technology product to date, the PokerOne Shuffler™.  This technology will directly compete with Shuffle Master products that previously have had no competition. Based upon information and belief, as a direct result of Shuffle Master's inability to acquire the RES technology, Shuffle Master has initiated a calculated campaign against VendingData's interests intended to impede VendingData's business operations and the introduction of its newly developed RES technology into the marketplace.

## FIRST CLAIM FOR RELIEF

**(Declaratory Relief for Invalidity and Non-Infringement of U.S. Patent No. 6,323,373)**

25.     VendingData repeats and realleges the allegations set forth in Paragraphs 1 through 24 as though fully set forth herein.

26.     Based upon information and belief, on December 4, 2001, U.S. Patent No. 6,323,373 was issued with John Breeding as the named inventor. Plaintiff/Counterdefendant Shuffle Master is the purported assignee of the '373 patent.

27.     On information and belief, Shuffle Master owns other patents or pending applications which rely for priority on the '373 patent or one or more of the '373 Patent Predecessors.

28.     On or about August 9, 1994, Shuffle Master first filed U.S. Patent Application

11

1   Serial No. 08/287,729, which was the first of the '373 Patent Predecessors after it had
2   reviewed VendingData technology.  Shuffle Master filed various, successive applications
3   with the USPTO also after it had reviewed VendingData technology.

4       29.   On information and belief, one or more of the inventions disclosed and/or
5   claimed in the '373 patent and/or the '373 Patent Predecessors was derived from
6   information disclosed by VendingData to Shuffle Master under agreement(s) of
7   confidentiality and non-use, and the patent application preparation was guided with
8   knowledge of VendingData technology.

9       30.   Shuffle Master has asserted that products manufactured, used, sold or offered
10   for sale in the United States by VendingData are an infringement of the '373 patent.  Shuffle
11   Master's claims are premised on the validity of the '373 patent.

12       31.   By virtue of (i) any and all of Shuffle Master's breaches of contract; (ii) its use
13   of VendingData information to further its own research in violation of its agreements; (iii) its
14   assertion to the USPTO that it was the inventor of the materials disclosed and claimed in the
15   '373 patent and the '373 Patent Predecessors; and (iv) its unethical conduct in fraudulently
16   obtaining Defendants' research information on numerous occasions by representing that it
17   was interested in acquiring Defendants, when in fact it was not, Shuffle Master is guilty of
18   such illegal and unethical activity that the validity of the '373 patent and the '373 Patent
19   Predecessors is tainted and impaired.

20       32.   Further, on information and belief, the '373 patent is invalid, void and
21   unenforceable under the provisions of 35 U.S.C. §§ 101, 102, 103, 112, 115 and/or 116,
22   including all other applicable statutes and reasons, as set forth in VendingData's Affirmative
23   Defenses.

24       33.   As a result of the conduct alleged herein, the '373 patent and the '373 Patent
25   Predecessors, along with any pending applications relying on any of the foregoing for
26   priority, should be found unenforceable or invalid.

27   ///

28

12

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract)**

34.     VendingData repeats and realleges the allegations set forth in Paragraphs 1 through 33 as though fully set forth herein.

35.     Based upon information and belief, Shuffle Master executed confidential relationship agreements with VendingData or its predecessors-in-interest wherein Shuffle Master promised to maintain the confidentiality and trade secret status of any and all proprietary information disclosed and to use such proprietary information only for the limited purpose as set forth in the agreements.

36.     One or more of the inventions disclosed and/or claimed in the '373 patent and/or the '373 Patent Predecessors was derived without permission from information disclosed to Shuffle Master under these agreements of confidentiality and non-use, which acts constituted a breach of Shuffle Master's promise.

37.     VendingData became aware of Shuffle Master's breach of confidentiality agreements only after Shuffle Master procured and accused VendingData of violating the '373 patent, which patent was derived from information disclosed to Shuffle Master by VendingData or a predecessor-in-interest under the parties' confidentiality agreements.

38.     VendingData has been and will continue to be damaged by Shuffle Master as a result of Shuffle Master's improper actions.

**THIRD CLAIM FOR RELIEF**

**(Fraud in the Inducement)**

39.     VendingData repeats and realleges the allegations set forth in Paragraphs 1 through 38 as though fully set forth herein.

40.     On several occasions at times relevant to the issues in this case, Shuffle Master has approached VendingData or its predecessors-in-interest in an effort, ostensibly, to purchase VendingData and/or VendingData's technology with the willful, ulterior motive and intent to induce VendingData into providing Shuffle Master a review of the RES and

13

1   related technology in order to misappropriate this technology from its competitor.

2       41.     The first of these attempts was on or about May 24, 1994 through July 18,

3   1994. During this time, Shuffle Master approached and induced VendingData or its

4   predecessors-in-interest to disclose VendingData technology by, among other things,

5   executing an agreement of confidentiality on May 27, 1994, and by fraudulently affirming to

6   VendingData that Shuffle Master would maintain the trade secret status of any and all

7   proprietary information disclosed to it by VendingData.

8       42.     The second of these attempts was on or about November 29, 1995 through

9   early 1996. During this time, Shuffle Master approached and induced VendingData or its

10  predecessors-in-interest, to disclose VendingData technology by, among other things,

11  negotiating and drafting a proposed exclusive licensing agreement whereby, ostensibly,

12  Shuffle Master would become an exclusive distributor of products using the RES technology,

13  provided Shuffle Master was given a comprehensive review of all VendingData technology.

14  Based upon false assurances given by Shuffle Master, including the agreement that it would

15  maintain any review of VendingData technology in confidence, Shuffle Master was granted

16  a comprehensive review of VendingData's technology at the end of 1995 and through early

17  1996 based upon its fraudulent representations.

18      43.     Shuffle Master again approached and induced VendingData or its

19  predecessors-in-interest to disclose VendingData technology by, among other things,

20  executing an agreement of confidentiality on April 8, 1997, and by fraudulently representing

21  to VendingData that Shuffle Master would maintain the trade secret status of any and all

22  proprietary information disclosed to it by VendingData.

23      44.     At all relevant times, Shuffle Master made its representations to VendingData

24  and VendingData predecessors-in-interest that it would safeguard VendingData technology

25  and use the technology only for the limited purpose of entering into a business relationship

26  with VendingData and with full knowledge or belief that Shuffle Master would use information

27  gained from VendingData for Shuffle Master's own ulterior purposes and financial gain.

28      45.     Shuffle Master, by its willful, malicious and fraudulent conduct at all relevant

14

1    times herein, intended to induce reliance on the part of VendingData and its predecessors-
2    in-interest in order to obtain VendingData technology.

3        46.    VendingData or its predecessors-in-interest justifiably relied in good faith upon
4    the false representations made by Shuffle Master that Shuffle Master was genuinely
5    interested in acquiring VendingData and that Shuffle Master would not use VendingData
6    technology for Shuffle Master's own benefit or for other wrongful purposes.

7        47.    Despite its promises and assurances to VendingData, Shuffle Master
8    knowingly used VendingData technology to the financial detriment of VendingData by
9    wrongfully using one or more of VendingData's disclosed technologies or inventions in
10   deriving its '373 patent and/or the '373 Patent Predecessors.

11       48.    VendingData did not know, nor could have known, of Shuffle Master's
12   fraudulent conduct and intent to misuse disclosed proprietary information until Shuffle
13   Master asserted its recent claims in this action and gave VendingData an opportunity to
14   review the '373 patent.

15       49.    VendingData has been and will continue to be damaged by Shuffle Master as
16   a result of Shuffle Master's improper actions.

17
18                              **FOURTH CLAIM FOR RELIEF**

19             **(Violation of Uniform Trade Secrets Act, NRS 600A.010 *et seq.*)**

20       50.    VendingData repeats and realleges the allegations set forth in Paragraphs 1
21   through 49 as though fully set forth herein.

22       51.    At all relevant times herein, VendingData or its predecessors-in-interest was
23   the owner of certain proprietary information, including the RES system and all related
24   technology, that derived independent economic value from not being generally known to,
25   and not being readily ascertainable by proper means by, the public or others who could
26   obtain economic value from disclosure or use of the information.

27       52.    The proprietary information of VendingData was the subject of reasonable
28   efforts under the circumstances to maintain its secrecy, and, prior to application for a patent

Quirk & Tratos
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

1    on the proprietary information, Shuffle Master was given access to this information under
2    the strict promise that it would not use or disclose this information but for the limited purpose
3    of determining whether it would enter into a business relationship with VendingData or its
4    predecessors-in-interest.

5        53.    Shuffle Master misappropriated VendingData proprietary information by
6    maliciously, willfully and without express or implied consent using VendingData information
7    to derive and procure Shuffle Master's '373 patent and/or '373 Patent Predecessors.

8        54.    VendingData did not know, nor could have known, of Shuffle Master's
9    misappropriation of its trade secrets until Shuffle Master asserted its recent claims in this
10   action and gave VendingData an opportunity to review the '373 patent.

11       55.    VendingData has been and will continue to be damaged by Shuffle Master as
12   a result of Shuffle Master's improper actions; accordingly, pursuant to NRS 600A.050,
13   VendingData is entitled to damages caused by Shuffle Master's misappropriation and unjust
14   enrichment caused by the misappropriation.  Furthermore, Shuffle Master's actions were
15   willful, wanton and conducted with disregard for the rights of the owner of the trade secret,
16   justifying an award of exemplary damages in an amount allowed pursuant to NRS
17   600A.050(2).

18                          **FIFTH CLAIM FOR RELIEF**

19                              **(Conversion)**

20       56.    VendingData repeats and realleges the allegations set forth in Paragraphs 1
21   through 55 as though fully set forth herein.

22       57.    Shuffle Master's intentional conduct to misappropriate VendingData proprietary
23   information using VendingData information to derive and procure its '373 patent and/or '373
24   Patent Predecessors has constituted a serious interference with VendingData's exclusive
25   right to use, market and sell its proprietary information.

26       58.    VendingData has been and will continue to be damaged by Shuffle Master as
27   a result of Shuffle Master's improper actions.

28

Quirk & Tratos
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

**SIXTH CLAIM FOR RELIEF**

**(Breach of Duty of Candor to the Patent Office)**

59.    VendingData repeats and realleges the allegations set forth in Paragraphs 1 through 58 as though fully set forth herein.

60.    Plaintiff has systematically misappropriated proprietary material disclosed during confidential meetings and through confidential communications to support its patent application filings. At no time did Defendants disclose to the USPTO that the inventions described in the '373 patent or its predecessor applications were derived by Plaintiff from Defendants during confidential meetings initiated during at least May, June and July of 1994. Plaintiff's original patent application was filed August 9, 1994.

61.    Plaintiff intentionally withheld information material to the issue of patentability of the '373 patent. The withheld information included the disclosure by Defendants' of display means for showing shuffler activity. Such disclosure by Defendants occurred prior to Plaintiff's original patent application filing from which the '373 patent depends.

62.    Moreover, Plaintiff intentionally failed to disclose to the USPTO prior art, including printed publications and public uses, showing that the use of counters, meters, seven-segment displays, and other registration means in gaming equipment was conventional, as required, prior to the alleged invention thereof by Plaintiff. Such prior art was material to the patentability of the '373 patent and known to Plaintiff.

63.    In addition, Plaintiff intentionally failed to disclose to the USPTO prior art, including printed publications and public uses, showing that the use of counters, meters, seven-segment displays and other registration means was common in other machines (e.g. copy machines) in the identical manner as Plaintiff claimed in the '373 patent. Such prior art was material to the patentability of the '373 patent and known to Plaintiff. The USPTO relied on Plaintiff's misrepresentation in issuing the '373 patent.

1.    Ultimately, based on Plaintiff's intentional conduct, the USPTO was not provided with a majority of the information material to the patentability of the '373 patent. Such conduct violates Shuffle Master's duty of candor to the USPTO. The USPTO relied

Quirk & Tratos
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

1    on Plaintiff's misrepresentations in issuing the '373 patent.

2         2.       Plaintiff's conduct has resulted in the improper issuance of at least the '373

3    patent such that Defendants continue to be damaged by Plaintiff's attempted enforcement

4    of the same.

5

6                              **PRAYER FOR RELIEF**

7    WHEREFORE, VendingData/Counterplaintiff prays for relief as follows:

8         A.       For a judgment dismissing Plaintiff's Complaint in its entirety;

9         B.       For a judgment declaring U.S. Patent No. 6,325,373, each claim thereof, the

10                 '373 Predecessor Patents, any other patents derived therefrom invalid,

11                 unenforceable and not infringed;

12        C.       For a judgment declaring that this is an exceptional case pursuant to 35

13                 U.S.C. § 285 and awarding VendingData its reasonable attorneys' fees;

14        D.       For damages in an amount to be proven at trial;

15        E.       For an assessment of costs against Plaintiff;

16        F.       For such other and further relief as this Court may deem just.

17   DATED this **25TH** day of April, 2002.

18

19                                          Respectfully submitted,

20

21

22                                          EDWARD J. QUIRK (Nevada Bar No. 828)
                                            MICHAEL J. McCUE (Nevada Bar No. 6055)
23                                          W. WEST ALLEN (Nevada Bar No. 5566)
                                            QUIRK & TRATOS
24                                          3773 Howard Hughes Parkway
                                            Suite 500 North
25                                          Las Vegas, Nevada 89109
                                            (702) 792-3773 - telephone
26                                          (702) 792-9002 - facsimile

27                                          Attorneys for Defendants
                                            VendingData Corporation, et al.
28

                                            18

Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
Quirk & Tratos
(702) 792-3773
(702) 792-9002 (fax)

1

## CONFIDENTIAL RELATIONSHIP AGREEMENT

1. **The parties to this Agreement are as follows:**

   a. **Sharps International, a Nevada limited partnership,** whose business address is 815 S Third Street, Las Vegas, Nevada  89101 (hereinafter "Sharps").

   b. **Shuffle Master, Inc.** a corporation organized under the laws of the State of Minnesota, whose address is 10921 Valley View Road, Eden Prairie, Minnesota  55344 (hereinafter "Receiver").

2. Sharps is in possession of Proprietary Information of a technical and business nature relating to new systems relating to novel cards and methods for playing blackjack, a blackjack game known as "Fantasy 21", and a playing card shuffler.  The systems include such information as their construction, methods of manufacturing, and related business information.  Such Proprietary Information may include, for example:  drawings, sketches, written and oral descriptions, photographs, plans, specifications, data, formulae, processes, apparatus, designs, prototypes, samples, customer lists, price lists, studies, findings, reports, computer programs, inventions, ideas or know-how, but is not limited to these specific forms of information.

3. Sharps intends to maintain the confidentiality and trade secret status of this Proprietary Information.

4. Receiver desires the opportunity to review such Proprietary Information for the limited purpose of determining if Receiver is interested in distributing and/or acquiring Sharps product line and related intellectual property.

5. In consideration of the mutual promises make herein the parties agree as specified in this Agreement.  Receiver agrees not to disclose any such Proprietary Information to any persons or organizations other than Sharps or employees of Receiver who need to know in order to fulfill the limited purposes described above.  Receiver also agrees to assume responsibility for unauthorized disclosure and use by employees or agents thereof, and further that all employees or agents to whom the Proprietary Information is disclosed will be told of the confidential relationship evidenced hereby and the responsibilities created under this Agreement.

6. Receiver agrees to use the Proprietary Information solely for the purpose stated in paragraph 4, and that all tangible materials will be appropriately  secured to prevent unauthorized use or access.  Receiver further agrees not to manufacture goods or to provide services using the Proprietary Information in connection therewith unless authorized by Sharps.

7. The amount of Proprietary Information to be disclosed is completely within the discretion of Sharps.

8. Nothing in this agreement shall deprive the Receiver of the right to use or disclose any of the information:
   a. Which is at the time of disclosure generally known to the trade or the public;

   b. Which becomes at a later date generally known to the trade or to the public through no fault  of Receiver and then only after said later date;

   c. Which is possessed by Receiver, as evidenced by Receiver's written or other tangible evidence, before receipt thereof from Sharps.

9. Nothing in this agreement shall be construed as granting or implying any right under any Letters Patent, copyright or trademark of any invention, work or trademark covered thereby.

10. This agreement shall be effective as of the date of signature by an authorized representative of Receiver.

11. Sharps acknowledges that Receiver has submitted to Nevada Gaming Control Board its own version of a multi deck playing card shuffler.

| Sharps | Receiver |
|---|---|
| By: _Randy R. Sines_ | By: _Jayl J Selti_ |
| Title _Managing General Partner_ | Title _Chief Financial Officer_ |
| Date _5/25/94_ | Date _5-27-94_ |

APR-09-97 WED 11:35    KIDS QUEST      FAX NO. 4756. 1       P. 02
04/08/97  TUE 09:00 FAX 612 943 2090    SMG-CORPORATE                @002

# CONFIDENTIAL RELATIONSHIP AGREEMENT

1.   The parties to this Agreement are as follows:

   a.    <u>Casinovations Incorporated</u>     (hereinafter "Presentor") whose business
address is <u>2718 E.57th Ave, Suite 107</u> ; Spokane, WA 99223

   b.    <u>Shuffle Master, Inc.</u>
      ( )   an individual, or
      (x)   a corporation organized  under the laws of the State of __Minnesota__

  whose address is:  <u>10921 Valley View Road</u>

           <u>Eden Prairie, MN 55344</u>
  (hereinafter "Receiver").

2.   Presentor       is in possession of Proprietary Information of a technical and business nature relating
to   <u>Random Ejection Shuffling Machines (single & multi deck)</u>. The system includes such novel parts,
their construction, methods of manufacturing, and related business information.   Such Proprietary Information may
include, for example:   drawings, sketches, written and oral descriptions, photographs, plans, specifications, data,
formulae, processes, apparatus, designs, prototypes, samples, customer lists, price lists, studies, findings, reports,
computer programs, inventions, ideas or knowhow; but is not limited to these specific forms of information.
3.   Presentor         intends' to maintain the confidentiality and trade secret status of this Proprietary
Information.
4.   Receiver desires the opportunity to review such Proprietary Information for the limited purpose of _____

    <u>review for consideration of corporate acquisition</u>
5.   In consideration of the mutual promises made herein the parties agree as specified in this Agreement.
Receiver agrees to receive such Proprietary Information in confidence and to maintain the secrecy thereof.  Receiver
further agrees not to disclose any such Proprietary Information to any persons or organizations other than
  Presentor     or employees of Receiver who need to know in order to fulfill the limited purposes described
above.  Receiver also agrees to assume responsibility for unauthorized disclosure and use by employees or agents
thereof, and further that all employees or agents to whom the Proprietary Information is disclosed will be told of
the confidential relationship evidenced hereby and the responsibilities created under this Agreement.
6.   Receiver agrees to use the Proprietary Information solely for the purpose stated in paragraph 4, and that all
tangible materials will be appropriately secured to prevent unauthorized use or access.  Receiver further agrees not
to manufacture goods or to provide services using the Proprietary Information in connection therewith unless
authorized by
7.   The amount of Proprietary Information to be disclosed is completely within the discretion of Presentor.

8.   Nothing in this agreement shall deprive the Receiver of the right to use or disclose any of the information:
   a.    Which is at the time of disclosure generally known to the trade or the public;
   b.    Which becomes at a later date generally known to the trade or to the public through no fault of Receiver
      and then only after said later date;
   c.    Which is possessed by Receiver, ~~as evidenced by Receiver's written or other tangible evidence,~~ before *Receiver*
      receipt thereof from Presentor. *OR independently developed by Receiver without Reference*
9. . Nothing in this agreement shall be construed as granting or implying any right under any Letters Patent, *to the*
copyright or trademark of any invention, work or trademark covered thereby.          *disclose*
10.  This agreement shall be effective as of the date of signature by an authorized representative of Receiver. *information*

Presentor                                     Receiver

By: *Randy D Sines*                       By: *[signature]*

Randy D. Sines                          Joseph Lahti
Vice President                           President

Title _____            Title _____

    <u>March 7, 1997</u>                     *4-8-97*
Date                                    Date

FO18.941.AO1  A37120133ION                 RGP\CONF-REL\CONF.REL.AG1

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on April 25, 2002, I caused a copy of the foregoing

3  **DEFENDANTS' ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT AND**

4  **COUNTERCLAIMS AGAINST SHUFFLE MASTER, INC.** upon the party by first class mail,

5  postage prepaid, to counsel of record addressed as follows:

6                        DONALD J. CAMPBELL
                         J. COLBY WILLIAMS
7                        CAMPBELL & WILLIAMS
                         Bank of America Plaza, Suite 1409
8                        300 South Fourth Street
                         Las Vegas, NV 89101-6051
9
                         PAUL A. STEWART
10                       IRFAN A. LATEEF
                         KNOBBE, MARTENS, OLSON & BEAR
11                       620 Newport Center Dr., 16th Fl.
                         Newport Beach, CA 92660
12

13

14      _____
15              An employee of Quirk & Tratos

16

17

18

19

20

21

22

23

24

25

26

27

28

Quirk & Tratos
Suite 500 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)